**REAL PROPERTY**

CONTRACTS – DISCLOSURE AND DISCLAIMER STATEMENTS


March 11, 1994


*The Honorable Larry E. Haines*
*Maryland Senate*

You have requested our opinion concerning the provision of a disclaimer statement by a seller of single family residential real property under §10-702 of the Real Property ("RP") Article, Maryland Code. Specifically, you ask whether this section permits a disclaimer statement to be provided by the seller to the buyer after the execution of the contract.

For the reasons stated below, we conclude that RP §10-702 should be construed to apply the same time frames to a disclaimer statement as are expressly applied to a disclosure statement.[1] Hence, a seller's delivery of a disclaimer statement after the execution of the contract would leave the buyer and the seller in the same position as if the seller delivered a disclosure statement at that time. Because the statutory language does not reflect this construction, however, the General Assembly should give consideration to clarifying legislation.

**I**

**Disclosure and Disclaimer Statements**

RP §10-702 was added to the Code by Chapter 640 (House Bill 1210) of the Laws of Maryland 1993. The new section became effective on January 1, 1994. With certain exceptions that are not pertinent to this analysis, the new law requires a seller of single family residential real property to complete and deliver to each buyer either a "residential property condition disclosure statement" or a

---

[1] This conclusion affirms advice previously given by Assistant Attorney General Elizabeth H. Trimble in a letter to B. George Ballman, Esquire (December 20, 1993).

"residential property disclaimer statement."   RP §10-702(b)(1).[2]
Both statements are to be made on forms adopted in a regulation by
the Maryland Real Estate Commission.

If the seller chooses to provide a disclosure statement, the form
"shall disclose those items that ... the State Real Estate Commission
requires to be disclosed about the physical condition of the
property."  RP §10-702(d)(1).  The statute goes on to specify much
of what must be included on the form:

> The disclosure form shall include a list of
> defects or information of which the vendor
> has actual knowledge in relation to the
> following:
>
> (i) Water and sewer systems, including
> the source of household water, water treatment
> systems, and sprinkler systems;
>
> (ii) Insulation;
>
> (iii) Structural systems, including the roof,
> walls, floors, foundation, and any basement;
>
> (iv) Plumbing, electrical, heating, and air
> conditioning systems;
>
> (v)  Infestation  of  wood-destroying
> insects;
>
> (vi) Land use matters;
>
> (vii) Hazardous or regulated materials,
> including asbestos, lead-based paint, radon,
> underground storage tanks, and licensed
> landfills; and
>
> (viii) Any other material defects known to
> the vendor.

---

[2] In this opinion, we shall use the term "buyer" and "seller" rather
than the more formal "purchaser" and "vendor," used in the statute.

RP §10-702(d)(2).[3]  The seller's disclosure is based on the seller's actual knowledge at the time; the seller "is not required to undertake or provide an independent investigation or inspection of the property in order to make the disclosures required by this section."  RP §10-702(d)(4).   The disclosure form also notifies buyers "that the information contained in the disclosure statement is the representation of the vendor and is not the representation of the real estate broker or sales person, if any."  RP §10-702(d)(3)(ii).[4]

A seller is not required to provide this detailed disclosure statement, however.  Instead, the seller may opt to provide a disclaimer statement.  This form is intended to warn the buyer that:

> (1)  The vendor makes no representations or warranties as to the condition of the real property or any improvements on the real property;  and

> (2)  The purchaser will be receiving the real property "as is," with all defects that may exist, except as otherwise provided in the contract of sale of real property.

RP §10-702(c)(2).

---

[3] The form approved by the Real Estate Commission sets out a set of questions about each of the items listed in the statute.  For example, question 2 on the disclosure statement is:  "Basement:  any leaks or evidence of moisture?"  The seller is to answer "yes," "no," "unknown," or "does not apply."  For this and all other items on the form, a blank line permits the seller to offer any comments or to elaborate on the answer.

[4] This provision does not excuse a real estate broker or other licensee from compliance with the obligations imposed on licensees. Under §16-322(a)(4) of the Business Occupations and Professions Article, Maryland Code, a licensee is subject to discipline if the licensee "intentionally or negligently fail to disclose to any person with whom the ... licensee deals a material fact that the licensee knows or should know and that relates to the property with which the licensee ... deals."

**II**

**Delivery of Statements**

In addition to outlining the contents of the respective statements, the statute also attempts to lay out the details of the delivery of the statements, the rights of the buyer upon receipt of a statement, and certain deadlines. Unfortunately, the seeming statutory objective − to make uniform the procedures governing disclosure statements and disclaimer statements, given that seller has the freedom to choose which statement to deliver − is not fully carried out in the drafting of the provisions.

The pertinent provisions begin in RP §10-702(e) with an identical approach to the delivery of a disclosure or disclaimer statement:

(1) Except as provided in paragraph (2) of this subsection, the vendor shall deliver the completed disclosure or disclaimer statement required by this section to the purchaser on or before entering into a contract of sale by the vendor and the purchaser.

(2) The disclosure or disclaimer statement shall be delivered to each purchaser before the execution of the contract of sale by the purchaser in the case of:

(i) A land installment contract, as defined in §10-101 of this title;

(ii) An option to purchase agreements; and

(iii) A lease agreement containing an option to purchase provision.

(3) At the time the disclosure or disclaimer statement is delivered, each purchaser shall date and sign a written acknowledgment of receipt, which shall be included in or attached to the contract of sale.

Having established identical requirements for the delivery of the respective statements, the statute then omits any reference to disclaimer statements in its recitation of the buyer's rights and the consequences of a failure to deliver a statement. That is, RP §10-702(f) provides that a buyer "who receives the disclosure on or before entering the contract of sale does not have the right to rescind the contract of sale based upon the information contained in the disclosure statement." Another provision, RP §10-702(g)(2), deals with the situation of a buyer "who does not receive the disclosure statement on or before entering into the contract of sale ...." If the seller accepts the buyer's offer and executes a contract with the buyer and then provides the disclosure statement within three days, the buyer has the right "[t]o rescind the contract of sale at any time before the receipt of disclosure statement or within 5 days following receipt of the disclosure statement." RP §10-702(g)(2)(i). But "[i]f the disclosure statement is delivered later than 3 days after the vendor enters into a contract of sale with the purchaser, the contract is void." RP §10-702(g)(1).

In our view, the omission of a reference to a disclaimer statement in these latter provisions was inadvertent. Nothing in the legislative history suggests a decision by the General Assembly to differentiate disclosure and disclaimer statements in contexts where no reasoned distinction appears to exist. To the contrary, the legislative history suggests that the omission of a reference to a disclaimer statement in RP §10-702(f) and (g) was the result of an amendment process that focused on policy issues rather than drafting details.

When House Bill 1210 was introduced, it already contained the language now in RP §10-702(b) requiring a seller to deliver either a disclosure or disclaimer statement. However, it did not contain any reference to the disclaimer statement in RP §10-702(e), dealing with the time of delivery. This oversight was corrected by amendment in the Economic Matters Committee.

The same amendment dealt with RP §10-702(f) and (g), but the focus was not on disclaimer statements. As introduced, the bill contained these subsections, worded as follows:

(f)    A purchaser who receives the disclosure on or before entering into the contract of sale does not have the right to rescind the contract of sale based on the information contained in the disclosure statement.

(g)(1)    If the disclosure statement is delivered later than 10 days after the vendor enters into a contract of sale with the purchaser, the contract is void.

(2)  A purchaser who does not receive the disclosure statement on or before entering into the contract of sale has the unconditional right, upon written notice to the vendor or vendor's agent:

(i)  To rescind the contract of sale at any time before the receipt of the disclosure statement or within 5 days following receipt of the disclosure statement; and

(ii) To the immediate return of any deposits made on account of the contract.

The amendment deleted all of subsection (g) and the phrase "who receives the disclosure on or before entering the contract of sale" from subsection (f).

As the bill passed the House, then, no real discrepancy existed between disclosure and disclaimer statements.  Either had to be delivered, in most instances, on or before the execution of the contract by the parties.  RP §10-702(e)(1).  There was no language that specified the consequences of post-execution delivery.

When House Bill 1210 reached the Senate, the provisions in RP §10-702(f) and (g) that had been amended out by the House Economic Matters Committee were put back in by amendment in the Senate Judicial Proceedings Committee.  The Senate committee took this action to conform House Bill 1210 to a Senate companion bill, Senate Bill 707.  Although material in the legislative file does not explain the reasoning, presumably the Senate's focus was on contingencies in the event that the seller did not deliver a statement prior to execution, not on the omission of a reference to the

disclaimer statement. The two chambers ultimately agreed to retain the provision added by the Senate committee but to reduce to three days (from ten) the period after which the seller's failure to deliver the statement would make the contract "void."[5]

---

[5] We have not been asked to opine about the meaning of this term in RP §10-702(g)(1), and therefore we do not do so. However, we do wish to note significant doubt whether the term "void" was intended to apply in its strict sense, when it means that "an instrument or transaction is nugatory and ineffectual so that nothing can cure it." *Black's Law Dictionary* 1573 (6th ed. 1990). Given the importance of the issue and the need for certainty, prompt legislative clarification is desirable.

On the one hand, there is evidence that the General Assembly was aware of the danger in using the term "void" but did so anyway. In a letter dated March 17, 1993, to the Chairman of the Economic Matters Committee, Nancy Haas, Esquire, Chair of the Real Property Code Revision Committee of the Bar Association's Section of Real Property, Planning and Zoning, pointed out that the apparent power given to the seller to make a contract void by failing to deliver a statement by the deadline after the execution of the contract "conflicts with later provisions of the bill which provide that the contract is *voidable* at the option of the purchaser based on the seller's failure to make the required disclosures." (Emphasis in original.) Ms. Haas suggested deleting the word "void" and substituting the phrase "voidable at the option of the purchaser." The General Assembly chose instead to retain exactly the wording that gave rise to Ms. Haas's concern.

On the other hand, it is hard to see why a law intended to aid buyers would victimize the unwary buyer by giving a seller who entered a contract without delivering a statement the great advantage of three risk-free days to look around for a better offer; the seller could then deprive the buyer of the benefit of the bargain simply by doing nothing, if "void" were read literally. What's more, unless "void" really means "voidable by the buyer," RP §10-702(j)(2)(i), which cuts off the buyer's right to rescind the contract after closing, would be meaningless, for no one can go to settlement within three days of the contract.

Hence, we lean toward the view that, under these circumstances, the term "void" should be understood as "voidable," at the election of the buyer and subject to the limitations on the exercise of that authority in RP §10-702(g)(3) and (j)(2). As *Black's Law Dictionary* points out, "The word `void' is used in statutes in the sense of utterly void so as to be incapable of ratification, and also in the sense of voidable and resort must be had to the rules of construction in many cases to determine in which sense the Legislature intended to use it." Certainly, cases can be found in which courts have given the latter construction to the term "void" in a statute. *See, e.g., United States v. Peco Intern., S.A.*, 243 F. Supp. 250, 253 (D.C.Z. 1965); *In re Reardon's Estate*, 243 Cal. App. 2d 221, 52 Cal. Rptr. 68, 73 (1966); *Jones v. Zoning Bd.*, 423 Pa. 416, 224 A.2d 205, 208 (1966). *Cf. Daugherty v. Kessler*, 264 Md. 281, 285, 286 A.2d 95 (1972) ("Courts have used the words `void,' `voidable,' `invalid' and `unenforceable' imprecisely, and when they say an

(continued...)

This sequence of events suggests that the General Assembly simply did not focus on the drafting point that, if provisions on the consequences of late delivery were to be retained, they should be conformed to the basic parity between disclosure and disclaimer statements established in the delivery requirement itself.

Under these circumstances, we conclude that the omission of the reference to disclaimer statements in RP §10-702(f) and (g) was inadvertent. The approach to statutory construction developed by the Court of Appeals in recent years enables us to give effect to what we believe was the legislative objective, notwithstanding the apparent drafting omission.

In construing these provisions, we must be faithful to "the purpose of the legislation, determined in light of the statute's language and context." *Leppo v. State Highway Administration*, 330 Md. 416, 422, 624 A.2d 539 (1993). "Context may include related statutes, pertinent legislative history and 'other material that fairly bears on the fundamental issue of legislative purpose or goal ....'" *Government Employees Ins. Co. v. Insurance Comm'r*, 332 Md. 124, 132, 630 A.2d 713 (1993) (quoting *Kaczorowski v. City of Baltimore*, 309 Md. 505, 515, 525 A.2d 628 (1987)). *See also, e.g., Harris v. State*, 331 Md. 137, 146, 626 A.2d 946 (1993). Finally, "construction requires that the statute be given a reasonable interpretation, not one that is illogical or incompatible with common sense." *Harris,* 331 Md. at 145.

The main purpose of the statute is to provide the buyer with information that permits an informed decision whether to make an offer or, if an offer was already made and accepted, to rescind the contract. *See, e.g.,* Bill Analysis of House Bill 1210, House Economic Matters Committee. The disclosure statement certainly provides that information, but so does the disclaimer statement. The latter is a warning to the buyer that the property is being sold "as is."

A related purpose of the time frames in the statute is to ensure finality in transactions by putting limits on the buyer's ability to rescind. A buyer who receives a disclosure or disclaimer statement

---

[5] (...continued)

oral contract is void, usually do not mean it ....") *See also Kimm v. Andrews*, 270 Md. 601, 617-18, 313 A.2d 466 (1974) (party who failed to carry out contractual undertaking by specified time may not invoke provision making contract "void" after that time).

before making an offer will have the information that the General Assembly intended be provided, so as to decide whether to make the offer and, if so, at what price. If the buyer who has received either statement decides to make an offer, there is no logical basis for either statement to serve as a basis for recision thereafter. RP §10-702(f). The same parallel treatment logically follows even if the buyer does not receive a statement until a day or two after the contract has been fully executed. The buyer then has five days after receipt of the statement to decide whether the information in the disclosure statement − or, in our view, the information in the disclaimer statement, namely that the property is being sold "as is" − warrants exercise of the buyer's right to rescind the contract. RP §10-702(g)(2).

We reach the same conclusion about RP §10-702(g)(1), the provision making the contract of sale "void" if the disclosure statement is delivered later than three days after the contract is executed. Whatever the intended meaning of this provision, the consequences should be the same whether the statement that is delivered so late (or not at all) is a disclosure statement or a disclaimer statement.[6]

In short, the General Assembly was at pains to fashion detailed provisions on the consequences of post-execution delivery. It would be inconsistent with this legislative objective to read the statute as if it left a vacuum when it came to post-execution delivery of disclaimer statements.

## III

### Conclusion

In summary, it is our opinion that if a seller delivers a disclaimer statement to a buyer after the execution of the contract but not later than three days after execution, the buyer has a right of rescission as specified in RP §10-702(g)(2), just as if the seller delivered a disclosure statement at that time. If a seller delivers a disclaimer statement after that time, RP §10-702(g)(1) applies to the

---

[6] See note 5 above.

contract, just as it would if a disclosure statement were delivered that late.

J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz
*Chief Counsel*
  *Opinions & Advice*

***Editor's Note:***

The issue discussed in note 5 above was resolved by the Court of Appeals in *Romm v. Flax*, 340 Md. 690 (1995), which held that the term "void," properly construed in this context, means voidable at the option of the buyer.